**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **WILLIAM BACON** | Case No. 7:16-CR-2 (HL) |

**ORDER**

Before the Court is Defendant William Bacon's Renewed Motion for Judgment of Acquittal or, in the alternative, for a New Trial. (Docs. 333, 381). For the following reasons, Defendant's motion is DENIED.

**I. PROCEDURAL BACKGROUND**

A grand jury in this district returned an indictment against Defendant Dr. William Bacon and five co-defendants on February 10, 2016. (Doc. 1). Dr. Bacon was charged in Count One with conspiracy to distribute or dispense controlled substances without a legitimate medical purpose and not in the normal course of medical practice. Counts Four and Five charged Dr. Bacon with two substantive counts of dispensing controlled substances without a legitimate medical purpose. Count Six charged Dr. Bacon with conspiracy to launder money. A superseding indictment was returned on June 15, 2016, adding two additional co-defendants but not otherwise altering the charges against Dr. Bacon. (Doc. 88).

Dr. Bacon entered a plea of not guilty on February 23, 2016. (Doc. 19). The Court thereafter declared the case complex, and, over the course of the next two

years, the case proceeded through discovery and multiple motions hearings. On the eve of trial, four Defendants remained, the other four having already pleaded guilty. Then, immediately before jury selection commenced on May 29, 2018, two more defendants changed their pleas, leaving only Dr. Bacon and Defendant Dr. Donatus O. Mbanefo to proceed to trial.

The Government began presenting its case on May 30, 2018. The Government spent the next seven days introducing evidence concerning the operation of two pain management clinics: the Wellness Center of Valdosta, located in Valdosta, Georgia; and the Relief Institute of Columbus, located in Columbus, Georgia. Through the testimony of agents from various law enforcement agencies; other doctors who worked for brief stints at the two clinics; concerned pharmacists; an undercover agent who presented herself as a patient at each clinic; numerous former patients; and two experts familiar with the prescribing practices of pain management clinics and the red flags of clinics operating for illegitimate medical purposes, the Government established Dr. Bacon's involvement in the clinic, his knowledge of the day-to-day operations of the clinic, and his knowledge that he was prescribing a powerful cocktail of controlled substances to patients without a legitimate medical purpose. The Government further bolstered its case through the introduction of the testimony of Defendants Shavonta Bright, Junior Biggs, and Carol Biggs, each of whom testified about the establishment of the clinics and Dr. Bacon's specific involvement.

2

The Government rested on the eighth day of trial, at which time Dr. Bacon orally moved for judgment of acquittal. The Court denied Dr. Bacon's motion. Dr. Bacon then took the stand in his own defense. He offered no other evidence. The Court charged the jury on June 8, 2018, day nine of trial. The jury deliberated over the next two days. On June 13, 2018, the jury returned a verdict, finding Dr. Bacon guilty as to Count One and not guilty as to all remaining counts. Dr. Bacon now renews his motion for judgment of acquittal or, in the alternative, for a new trial.

## II.     RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

Dr. Bacon argues that he is entitled to judgment of acquittal under Federal Rule of Criminal Procedure 29(c) because the Government failed to produce evidence sufficient to establish a conspiracy in violation of 21 U.S.C. § 846. And, even if the Court finds that the Government did prove the existence of the conspiracy, the evidence still was insufficient to prove that Dr. Bacon knowingly and voluntarily joined in it.

A motion for judgment of acquittal under Rule 29 "is a direct challenge to the sufficiency of the evidence presented against the defendant." United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994). In ruling on a Rule 29 motion, the court must "determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319

(11th Cir. 1987)) (internal quotation marks omitted). A conviction will be upheld if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Hunt</u>, 187 F.3d 1269, 1270 (11th Cir. 1999) (emphasis in original).

Here, the Government produced ample evidence to support the jury's conclusion that Dr. Bacon knowingly and voluntarily joined in an agreement to unlawfully dispense controlled substances. To prove a conspiracy in violation of 21 U.S.C. § 846, the Government is required to prove "(1) a conspiracy (or agreement) existed between Defendants or between others; (2) Defendants knew the essential objects of the conspiracy, which are to do either an unlawful act or a lawful act by unlawful means; and (3) Defendants knowingly and voluntarily participated in the conspiracy." <u>United States v. Westry</u>, 524 F.3d 1198, 1212 (11th Cir. 2008). The existence of an agreement may "be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." <u>United States v. Mateos</u>, 623 F.3d 1350, 1362 (11th Cir. 2010) (quotation marks omitted). A conspiracy conviction will be upheld if "the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." <u>United States v. Figueroa</u>, 720 F.2d 1239, 1246 (11th Cir. 1983). "The evidence need not be inconsistent with every reasonable hypothesis other than guilt." <u>United States v. Gamory</u>, 635 F.3d 480, 497 (11th Cir. 2011). The jury is allowed "to choose among the several reasonable conclusions to be drawn from the evidence." <u>Id.</u>

4

There was overwhelming evidence introduced throughout the trial from which the jury could reasonably infer that Dr. Bacon was participating in the alleged conspiracy to dispense controlled substances without a legitimate medical purpose. The fact that the jury acquitted Dr. Bacon of the substantive charges surrounding his examination of the undercover agent does not vitiate the remaining evidence. Nor does Dr. Bacon's testimony that he discharged some patients from the Valdosta Wellness Center somehow alter the evidence that Dr. Bacon was engaged in the regular practice of conducting cursory, or no examinations, of patients and then prescribing large quantities and dosages of Oxycodone, Xanax, and other medications.

Dr. Bacon may very well have treated some patients according to an appropriate standard of care, but the evidence in general supports the conclusion that on the whole, Dr. Bacon was engaging in a practice of prescribing large numbers of controlled substances without a legitimate medical purpose. The jury also could infer that Dr. Bacon was aware of and involved in the conspiracy based on the testimony regarding the condition of the clinic, including the large number of patients who lined up early in the morning and often stayed late into the evening; the number of out-of-state patients and groups of patients arriving together; the overall condition of the office and apparent lack of medical equipment and supplies; the cash-based nature of the business; the establishment of a VIP system; as well as Dr. Bacon's knowledge of complaints received from pharmacies regarding his prescribing methods.

Dr. Bacon suggests that the testimony of the purported co-conspirators undermines any inference of a conspiracy. Dr. Bacon specifically points to the testimony of Junior Biggs and Carol Biggs, who both claimed to have intended to set up a legitimate pain management clinic. He additionally highlights select testimony from Shavonta Bright, who noted that Dr. Bacon presented himself professionally and implemented a protocol for drug screenings as well as a system to prevent "doctor shopping." However, the jury had to weigh these snippets of evidence along with voluminous other evidence of a contrary mission. And, to the extent that Dr. Bacon questions the credibility of any of the cooperating co-defendants or patients, or to bolster the veracity of his own testimony, credibility determinations "fall within the exclusive province of the jury and may not be revisited unless the testimony is 'incredible' as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997).

Having reviewed all of the evidence and testimony submitted at trial, the Court concludes that its original decision to deny Dr. Bacon's motion for judgment of acquittal was sound. The Court's determination that the Government produced adequate evidence from which a reasonable fact finder could conclude beyond a reasonable doubt that Dr. Bacon knowingly and voluntarily participated in a conspiracy to dispense controlled substances without a legitimate medical purpose remains unchanged. Dr. Bacon's renewed motion for judgment of acquittal is, accordingly, DENIED.

## III. MOTION FOR NEW TRIAL

Dr. Bacon contends that he is entitled to a new trial for two reasons: (1) the Court erred in permitting the introduction of summary charts; and (2) the Court impermissibly engaged in qualifying the expert witnesses and erred in allowing the experts to offer their opinions at trial. The decision to grant or deny a motion for new trial rests in the sound discretion of the trial court. United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). A district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 22. However, "[c]ourts are to grant them sparingly and with caution, doing so only in those really exceptional cases." Martinez, 763 F.2d at 1313. "The Court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Id. at 1312-13 (citations omitted).

### A. Admission of Summary Exhibits

As a part of the investigation underlying this prosecution, agents from the Document Media Exploitation Team ("DOMEX"), in partnership with the Drug Enforcement Agency ("DEA"), were assigned the task of reviewing and summarizing the patient files retrieved from the Wellness Center of Valdosta and the Relief Institute of Columbus. All of this information was entered into a master spreadsheet referred to as the DOMEX report. An electronic copy of the DOMEX was provided in discovery to Dr. Bacon and all of the other Defendants. Rather than introducing the entire report at trial, which the Government represented would have contained thousands of pages if printed, the Government moved to introduce

summaries of the report, including the name of each physician and the number and type of drugs prescribed by each physician. The Court admitted the summaries over Dr. Bacon's objection at trial. Dr. Bacon now moves the Court to grant a new trial based on his contention that the Court erred in permitting the introduction of the summary charts.

Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006; see also Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1160 (11th Cir. 2004) (explaining that documents on which a Rule 1006 exhibit is based need not be admitted into evidence but, if they are not introduced, must nevertheless be admissible under the Federal Rules of Evidence). While summary charts are to be used with caution, the decision to permit their introduction lies within the discretion of the Court. United States v. Richardson, 233 F.3d 1285, 1294 (11th Cir. 2000).

The sheer volume of medical records involved in this case is undisputed. Agents participating in the investigation collected no less than 75 boxes of patient files. During trial, the Government selected approximately 35 patient files to tender into evidence. The remainder of the files were made available to Dr. Bacon prior to trial (and according to the Government were available for the jury's inspection

8

upon request); however, rather than entering all of the files into evidence, the Government introduced a summary chart through William Reyes, who supervised the collection and cataloging of the evidence. Nineteen analysts worked together to compile the DOMEX report. The DOMEX, which is thousands of pages long in printed form, contains patient data along with the numbers and types of controlled substances prescribed by the physicians at the two clinics. That chart was then condensed down to a more succinct version for presentation at trial.

Dr. Bacon contends that the summary exhibit was improperly admitted because it is not a summary of the evidence but rather a summary of a summary. Dr. Bacon further argues that the summary constitutes Government work product and, therefore, that it is not proper evidence and that he should not have been convicted "by chart." The Court thoroughly addressed this issue at trial outside of the presence of the jury. The Court specifically elicited the following admissions from defense counsel: (1) the 75 boxes of patient records were made available to Dr. Bacon and are otherwise admissible; and (2) the DOMEX spreadsheet represents the work product of the investigative team and was produced to Dr. Bacon during discovery. The Court further clarified with the Government that the chart provides no analysis of the patient records but simply reports selected hard data found within the records.

At trial, Dr. Bacon cited to United States v. Naranjo, 634 F.3d 1198 (11th Cir. 2011), to support his argument that the Court should exclude the summary charts from evidence. However, in that case, the Eleventh Circuit concluded that the use

9

of summary charts is allowable, explaining that "this Court will permit the use of summary charts incorporating certain assumptions so long as supporting evidence has been presented previously to the jury . . . and where the court has made it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence." 634 F.3d at 1213 (quoting Richardson, 233 F.3d at 1294) (internal quotation marks and citation omitted). Additionally, "where the defense has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case, the likelihood of any error in admitting summary evidence diminishes." Id. (quotation marks omitted).

In this case, the summary charts contained no analysis, only data extracted directly from otherwise admissible and available evidence. Nevertheless, despite Dr. Bacon's argument to the contrary, he had the opportunity to cross-examine William Reyes, through whose testimony the summary was introduced, about the creation of the summary. But Dr. Bacon focused his questions on the legitimacy of the prescriptions recorded in the summary, a fact about which Reyes had no knowledge as it was his responsibility to report the data not analyze it. The Government objected to this line of questioning. The Court sustained the objection, and Dr. Bacon asked no further questions of the witness.

In response to the proposition that Dr. Bacon was somehow "convicted by chart," the Court points out that the jury was properly instructed that it was up to them to determine what weight, if any, to afford the summaries. The Court provided the following instruction to the jury:

> Charts or summaries have been admitted into evidence and have been shown to you during the trial for the purpose of explaining facts that allegedly are contained in the voluminous patient records that have been discussed but which have not all been admitted into evidence in the case. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you see fit.

(Doc. 321, p. 14).

The Court is satisfied that the evidence summarized by the charts introduced by the Government at trial is the classic type of evidence to which Rule 1006 applies. The charts themselves did not analyze any data but rather reported facts taken from a larger, more detailed summary. Furthermore, the patient files from which this information was gathered was made available to Dr. Bacon well in advance of trial and were otherwise available for the jury's examination. And, finally, the jury was properly instructed to apply what weight they deemed appropriate to the summaries when evaluating the totality of the evidence. Because the admission of the summary charts was not error, the Court denies Dr. Bacon's motion for new trial on this basis.

### B. Qualification of Government's Expert Witnesses

Dr. Bacon next questions the Court's method for qualifying the Government's expert witnesses, Dr. Gary Kaufman and Dr. Gene Kennedy. Dr. Bacon suggests that the Court erred by not holding a separate Daubert hearing prior to the commencement of trial. Dr. Bacon also contends that the Court impermissibly interjected itself into the qualification process.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"As the Supreme Court made abundantly clear in Daubert, Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 n.7, 597 (1993) (emphasis in original)). In discharging its gatekeeping duty, the district court should consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

12

The Government filed its Notice of Expert Testimony on October 2, 2017, informing all Defendants of its intention to offer the testimony of Dr. Gary Kaufman and Dr. Gene Kennedy at trial. (Doc. 156). Dr. Bacon filed a Motion for <u>Daubert</u> Hearing on April 12, 2018, challenging the qualification of Dr. Kennedy to offer any opinion regarding Dr. Bacon's treatment and prescribing practices. (Doc. 239). At the pretrial conference held on May 10, 2018, the Court reserved ruling on Dr. Bacon's <u>Daubert</u> motion. Following the pre-trial conference, Dr. Bacon amended his motion to include Dr. Kaufman. (Doc. 271). The Government filed no written response to either motion.

Dr. Kaufman took the stand on the seventh day of trial. Before his testimony began, Dr. Bacon inquired about how the Court planned to address the <u>Daubert</u> issue, to which the Court responded that it intended first to hear testimony concerning Dr. Kaufman's qualifications. (Doc. 371, p. 61-62). The Government then elicited testimony from Dr. Kaufman about his training and experience. At the conclusion of Dr. Kaufman's recitation of his educational and professional background, the Government tendered the doctor as an expert in the field of pain management medicine. (<u>Id.</u> at p. 66). Dr. Bacon conceded that Dr. Kaufman maintained the proper credentials but objected to his methodologies. (<u>Id.</u>). The Court qualified Dr. Kaufman as an expert but reserved judgment on his methodology and pertinent opinions. (<u>Id.</u>).

The Government's questioning of Dr. Kaufman recommenced, and he moved on to testify about how he became involved in the case and what materials

he reviewed to form his opinions. The Court provided Dr. Bacon with the opportunity to cross-examine Dr. Kaufman regarding his methodologies. (Id. at p. 69-70). The Court then posed a series of its own questions to Dr. Kaufman relating to his methodologies. (Id. at p. 71-72). At the conclusion of its questioning, the Court overruled Dr. Bacon's objection and permitted Dr. Kaufman to testify. (Id. at p. 72). A similar exchange transpired during the presentation of Dr. Kennedy's testimony the following day.

Dr. Bacon's first objection is that the Court did not conduct a pre-trial Daubert hearing. However, there is no requirement that a hearing be held every time a party invokes a Daubert-type objection. See Corwin v. Walt Disney Co., 475 F.3d 1239, 1252 n.10 (11th Cir. 2007) ("although they are often helpful, hearings are not prerequisite to such determinations under the Federal Rules or established law"); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1113 (11th Cir. 2005) (noting that the trial court was under no obligation to hold a Daubert hearing). The district court is granted "the same broad latitude when deciding how to determine the reliability of expert testimony as it enjoys in determining whether the testimony is reliable." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1312 (11th Cir. 2000). Dr. Bacon's objection to the timing of when the Court undertook to evaluate the methodologies of the expert witnesses accordingly lacks merit.

Dr. Bacon's argument that the Court impermissibly interjected itself into the qualification colloquy is similarly misplaced. Dr. Bacon is correct that, generally,

14

the burden of establishing an expert's qualifications lies with the proponent of the testimony: "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." Frazier, 387 F.3d at 1260. However, "the task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under Daubert;" and the district court accordingly is afforded "considerable leeway in the execution of its duty." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (internal quotation marks and citation omitted). Further, a trial court's ruling on a Daubert issue is given great deference. See United States v. Brown, 415 F.3d 1257, 1264-65 (11th Cir. 2005). "Immersed in the case as it unfolds, a district court is more familiar with the procedural and factual details and is in a better position to decide Daubert issues. The rules relating to Daubert issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization. And we don't want to denigrate the importance of the trial and encourage appeals of ruling relating to the testimony of expert witnesses." Id. at 1266.

The Court's supplemental questioning of the Government's proffered expert witnesses falls squarely within the Court's "gatekeeping" function to ensure that only reliable evidence reaches the jury. The Court by no means usurped the role of the Government in undertaking to ask Drs. Kaufman and Kennedy additional questions about their methodologies but rather undertook to fulfill its role of

evaluating the reliability of the expert testimony prior to any presentation of the witnesses' opinions to the jury. The fact that Dr. Bacon disagrees with the Court's methods does not warrant granting his motion for new trial. Dr. Bacon's motion for new trial is accordingly DENIED.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant William Bacon's Renewed Motion for Judgment of Acquittal or, in the Alternative, for a New Trial (Docs. 333, 381).

**SO ORDERED** this 11th day of December, 2018.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks